IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANGELICA J. KAUHAKO, individually and as parent and next friend of her minor child, MARIANA DOE,<br><br>    Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII BOARD OF EDUCATION DEPARTMENT OF EDUCATION, *et al.*,<br><br>    Defendants.<br>――――――――――――――――――――<br>STATE OF HAWAII BOARD OF EDUCATION DEPARTMENT OF EDUCATION, *et al.*,<br><br>    Defendants and<br>    Third-Party Plaintiffs,<br><br>  vs.<br><br>RUSTON TOM,<br><br>    Third-Party Defendant. | CIVIL NO. 13-00567 DKW-KJM<br><br><br>**ORDER DENYING DEFENDANT STATE OF HAWAII BOARD OF EDUCATION DEPARTMENT OF EDUCATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** |

**ORDER DENYING DEFENDANT STATE OF HAWAII BOARD OF
EDUCATION DEPARTMENT OF EDUCATION'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

## INTRODUCTION

Following a nine-day trial, the jury returned a verdict against the State of

Hawaii Board of Education Department of Education ("State") and Kristin

Lindquist on Angelica Kauhako and her daughter Mariana's negligence-based

claims arising out a sexual assault against Mariana by another student at Waianae

High School.   However, as a result of the jury's determination that Lindquist did

not act with malice, the Court found that Lindquist was entitled to a qualified

privilege recognized by Hawaii law and ordered the claims against her dismissed.

The State now seeks judgment as a matter of law on the grounds that (1) it is immune

from liability because Lindquist is immune from liability and (2) no reasonable juror

could have concluded that the State was negligent based on the evidence in the

record.   Alternatively, the State seeks a new trial.   Because evidence of negligence

attributable to the State—independent of Lindquist's individual conduct—was more

than sufficient to support the jury's verdict and was not contrary to the clear weight

of the evidence, and because none of the alleged evidentiary errors warrant a new

trial, the State's motion is DENIED.

2

## BACKGROUND

Trial commenced on April 18, 2016 on a claim against the State under Title IX (Count I) and on the following claims against both the State and Lindquist: negligent supervision of students (Count V), negligence (Count VII), gross negligence (Count VIII), intentional infliction of emotional distress ("IIED") (Count X), and negligent infliction of emotional distress ("NIED") (Count XI).   Following Plaintiffs' case-in-chief, the Court denied Defendants' oral motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on Title IX, gross negligence, IIED, and NIED.   *See* Dkt. Nos. 172 and 182.   After Defendants rested on April 28, 2016, they orally moved for judgment as a matter of law on Plaintiffs' Title IX and negligence-based claims.   That motion was also denied.   *See* Dkt. No. 191.

The jury returned its verdict on May 2, 2016, finding the State and Lindquist liable for negligence, negligent supervision, and NIED.   The jury awarded Kauhako general damages in the amount of $157,500, and awarded Mariana $630,000 in general damages, $2,825 for past medical expenses and $20,000 for future medical expenses.   The jury also apportioned fault between the Defendants, finding the State 95 percent and Lindquist 5 percent liable, respectively.   *See* Dkt. No. 204 (Verdict Form).

3

The jury's verdict included a determination that Plaintiffs failed to prove by clear and convincing evidence that Lindquist was motivated by malice.   *See* Dkt. No. 204 (Verdict Form).   As a result, post-trial, the Court ruled as a matter of law that Lindquist was entitled to a state law qualified privilege, and, without objection, dismissed the three negligence-based claims against her with prejudice.   *See* Dkt. No. 207 (5/9/16 Order Dismissing Claims).

The State filed the instant motion on July 1, 2016, seeking judgment as a matter of law on all claims against it pursuant to Rule 50(b) and, alternatively, asking for a new trial pursuant to Rule 59.

## **DISCUSSION**

The State argues that it is entitled to judgment as a matter of law because (1) it is immune from liability on a *respondeat superior* basis and (2) the jury's findings of negligence are against the weight of the evidence.   Alternatively, the State seeks a new trial on the grounds that (1) the jury's verdict was not consistent with nor supported by the evidence and (2) it was error to allow Rachel Lynch, Ph.D. to testify as an expert witness and to award future medical expenses based on her testimony.   Because each of the State's arguments is without merit, the motion is denied.

## I.   **The Renewed Rule 50 Motion**

### A.   **Standard Of Review**

The State once again seeks judgment as a matter of law on Plaintiffs' three

negligence-based claims.   The Court previously denied Defendants' Rule 50

motion on these same claims during trial on April 28, 2016.   *See* Dkt. No. 191.

Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of
> law made under Rule 50(a), the court is considered to have
> submitted the action to the jury subject to the court's later
> deciding the legal questions raised by the motion.   No later than
> 28 days after the entry of judgment--or if the motion addresses a
> jury issue not decided by a verdict, no later than 28 days after the
> jury was discharged--the movant may file a renewed motion for
> judgment as a matter of law and may include an alternative or
> joint request for a new trial under Rule 59.   In ruling on the
> renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a
> > verdict;
> > (2) order a new trial; or
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

> To file a renewed motion under Rule 50(b), a party must first file
> a motion for judgment as a matter of law under Rule 50(a) before
> the case is submitted to the jury.   *E.E.O.C. v. Go Daddy
> Software, Inc*., 581 F.3d 951, 961 (9th Cir. 2009).   If the court
> denies or defers ruling on the Rule 50(a) motion and the jury
> returns a verdict against the moving party, the party may then
> renew the motion under Rule 50(b).   *Id*.   Because it is a

5

> "renewed" motion, a party cannot "raise arguments in its
> post-trial motion for judgment as a matter of law under Rule
> 50(b) that it did not raise in its preverdict Rule 50(a) motion."
> *Id*. (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761
> (9th Cir. 2003)).

*Munguia v. Grelyn of Maui, LLC*, 2011 WL 1364026, at *4-5 (D. Haw. Apr. 8,

2011), *aff'd*, 473 F. App'x 643 (9th Cir. 2012)[1]; *see also Experience Hendrix LLC v.*

*Hendrixlicensing.com Ltd*., 762 F.3d 829, 842 (9th Cir. 2014) ("In considering a

Rule 50(b)(3) motion for judgment as a matter of law, the district court must uphold

the jury's award if there was any 'legally sufficient basis' to support it.") (citation

omitted).

### B.   The State Is Not Entitled To Judgment As A Matter Of Law On Plaintiffs' Negligence-Based Claims

The State argues that it cannot be liable to Plaintiffs for negligence, negligent

supervision, or NIED because those claims were dismissed against Lindquist on

immunity grounds, and Lindquist's immunity must render the State likewise

immune under a *respondeat superior* theory.   The parties do not dispute that the

---

[1]To the extent the State did not seek judgment as a matter of law pre-verdict based on the application of Lindquist's conditional privilege to the State on a *respondeat superior* theory, the Court notes that no such argument was then available.   The claims against Lindquist had not been dismissed prior to verdict.   *See Go Med. Indus. Pty, Ltd. v. Inmed Corp*., 471 F.3d 1264, 1272 (Fed. Cir. 2006) ("It would have been impossible, however, for MMG and Rusch to challenge the jury's award of damages as excessive in a Rule 50(a) motion.").   Accordingly, the State's post-verdict argument has not been waived for Rule 50(b) purposes.

State is not liable for Lindquist's conduct based upon the dismissal of the claims against her individually.   The parties agree that while an employer is generally liable for the negligent acts of an employee that occur within the scope of employment, the employee's immunity from suit inures to the benefit of the employer as well.   *See Nakagawa v. Cnty. of Maui*, 2014 WL 1213558, at *14 (D. Haw. March 21, 2014); *Freeland v. Cnty. of Maui*, 2013 WL 6528831, at *24 (D. Haw. Dec 11, 2013); *Reed v. City & Cnty. of Honolulu*, 76 Haw. 219, 227, 873 P.2d 98, 106 (1994).   The parties dispute whether Plaintiffs sufficiently alleged and proved independent acts of negligence attributable to the State – that is, acts or omissions by State employees other than Lindquist.

Insofar as the State contends that there is no basis to attribute to it the conduct of actors other than Lindquist, the argument cannot withstand scrutiny.   The jury was instructed that the State is responsible for the conduct of its employees as follows:

> A governmental entity may act only through natural persons—its agents or employees.   In general, any agent or employee of a governmental entity may bind the governmental entity by acts and declarations made while acting within the scope of the authority delegated to him or her by the governmental entity, or within the scope of the agent's or employee's duties to the governmental entity.

Dkt. No. 189 (Final Jury Instructions – Instruction No. 11).   In other words, the

propriety of the State's conduct was not measured by the actions and omissions of

Lindquist alone, but by the conduct of each of the State's employees.

Viewing the facts in the light most favorable to Plaintiffs, the Court concludes

that a reasonable jury could have found the State responsible for the negligent

conduct of persons others than Lindquist for purposes of Count V (negligent

supervision), Count VII (negligence), and Count XI (NIED).   The jury was

presented with evidence that Kauhako raised the issue of prior assaults against

Mariana with members of Mariana's IEP team as early as November 2012, putting

the State on notice of a reasonably foreseeable risk of a specific harm to Mariana.

While Lindquist was a member of that team, she was not the sole State member.

Further, the evidence showed that Mariana's IEP team members, and the State

generally, did virtually nothing at that time to separate, additionally supervise, or

otherwise protect Mariana from her student perpetrator akin to the protective

measures that the State adopted much later, post-April 2013 *after* the assaults

alleged by Mariana had already occurred.   The Court acknowledges that Plaintiffs'

evidence was contradicted by IEP team members who attended the November

meeting with Kauhako, but the Court's function when considering a Rule 50(b)

motion is to determine sufficiency, not to conduct what would amount to a de novo

review.  *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (The Court "may not substitute its view of the evidence for that of the jury."); *see also Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) ("Our job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict.").

Moreover, there was direct testimony from Plaintiffs and State employees – including Dean Shimada, Jeri Martin, and Joanne DeCambra – regarding their interactions during the relevant time periods in November and December 2012 and April 2013, with respect to the events that formed the basis of Plaintiffs' negligence claims.   A reasonable jury could have concluded based on that testimony that DeCambra and Patricia Sofa negligently supervised and monitored both Mariana and Third-Party Defendant Ruston Tom on April 18, 2013, which allowed the two special education students to leave their classroom without any adult oversight, leading to the restroom incident in question.

To be clear, whether or not Lindquist is individually immune from liability, sufficient evidence of conduct by other employees attributable to the State was adduced at trial to support the jury's verdict on Plaintiffs' negligence-based claims. Consequently, the renewed motion is denied on this issue.

9

### C.   <u>The Jury Verdict Is Supported By Substantial Evidence</u>

The State next argues that the jury's findings of negligence are against the weight of the evidence and must be vacated.   Specifically, the State contends that the findings that it breached its (1) duty to protect Mariana from reasonably foreseeable harm and (2) duty of supervision are against the weight of the evidence. The State maintains that the evidence at trial was "clear that Ruston and Mariana were not in the bathroom at the same time on April 18, 2013, as was shown by the recording of the surveillance tape."   Mem. in Supp. at 9.

In assessing arguments regarding the sufficiency of the evidence, the movant's burden is substantial:

> The court will direct judgment as a matter of law if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."   *Go Daddy Software, Inc.*, 581 F.3d at 961 (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)).   When considering the motion, the court "may not make credibility determinations or weigh the evidence."   *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).   Instead, the court reviews the evidence "in the light most favorable to the nonmoving party" and draws "all reasonable inferences in that party's favor."   *Id.* (quoting *Josephs*, 443 F.3d at 1062)).   "While the district court may not resolve conflicts in the testimony or weigh the evidence, it may evaluate evidence at least to the extent of determining whether there is substantial evidence to support the verdict.  '[A] mere scintilla of evidence will not suffice.'"   *Von Zuckerstein v. Argonne Nat'l Laboratory*, 984 F.2d 1467, 1471 (7th Cir. 1993)

(citing *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir. 1984)).

*Munguia*, 2011 WL 1364026, at *4-5; *see also Reeves*, 530 U.S. at 149 ("Under Rule 50, a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.") (internal quotation marks omitted).

Viewing the evidence in the light most favorable to Plaintiffs, the State's various arguments regarding the lack of notice of prior assaults, evidence of Tom's good character and behavior, and what the security video of the bathroom on April 18, 2013 does or does not show, fall far short of persuading the Court that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."   *See Go Daddy Software, Inc.*, 581 F.3d at 961.

The State argues that it "could not have reasonably foreseen any harm to Mariana," based on what appears to be a selectively constructed timeline of events. Mem. in Supp. at 9-10.   The State's conclusion is belied by several factors.   First, the jury's finding that the State did not have actual knowledge of sexual harassment for purposes of Title IX liability is not determinative of what was "reasonably foreseeable" for purposes of evaluating a breach of duty under state negligence law.

Second, as noted previously, Plaintiffs presented evidence that Kauhako reported a pre-April 2013 incident of harassment to Lindquist and the IEP team in November 2012 and requested a one-to-one aide at that time for Mariana because of safety concerns.   Plaintiffs also presented evidence of a police report in which Lindquist is described as being aware of Mariana being inappropriately touched during an off-campus episode in the same November 2012 timeframe.   This evidence was apparently credited by the jury and formed a more than sufficient basis for it to conclude that the State should have reasonably foreseen what was to come in April 2013.   Third, the State places far too much reliance on its security video.   Having seen the very same video footage as did the jury, it is far from "clear" that the footage definitively shows "Ruston and Mariana were not in the bathroom at the same time."   Some of the video is grainy, much of it distant, and all of it far more unclear than clear.   There are also times when the two depicted and unsupervised individuals are outside of the stationary camera's view, albeit not in the restroom, when anything, including the alleged assault, could have occurred.   The video is simply not the "smoking gun" that the State advertised it to be in opening statements and during its case-in-chief, and the jury easily could have reached the same

conclusion.[2]   Viewing the evidence in the light most favorable to Plaintiffs for purposes of the renewed Rule 50 motion, the State certainly had notice of a prior off-campus episode between Mariana and Ruston, and a jury finding regarding whether the April 18, 2013 assault both occurred and was reasonably foreseeable is supported by substantial evidence.

## II.   <u>Motion for a New Trial</u>

### A.   <u>Standard of Review</u>

A motion for a new trial is governed by Federal Rule of Civil Procedure 59, which provides that after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."   Fed.R.Civ.P. 59(a).   "Rule 59 does not specify the grounds on which a motion for a new trial may be granted."   *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).   While a trial court must generally respect a jury's findings, if a trial court is

---

[2]Serious questions were also raised during trial about the manner in which the video was created and retained by school authorities.   For instance, the school deleted the original videos downloaded from its security cameras from the day in question, even though the school was aware of the import of the video at the time of its deletion.   Instead, the State preserved and produced to Plaintiffs only a small segment of the video from that day that in the State's judgment was relevant. That self-selected segment was what was played for the jury.   Accordingly, the jury could have reasonably discounted the value of the videotapes for this additional reason.

left with the definite and firm conviction that a mistake has been committed, it may

grant a new trial:

> On the one hand, the trial judge does not sit to approve miscarriages of justice.   His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it.   On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter....   If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

*Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir.

1987) (internal quotation and citations omitted).   "The judge can weigh evidence

and assess the credibility of witnesses, and need not view the evidence from the

perspective most favorable to the prevailing party."   *Id.* at 1371.   Nevertheless,

"the court is not justified in granting a new trial 'merely because it might have come

to a different result from that reached by the jury.'"   *Roy v. Volkswagen of America,*

*Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citation omitted).

**B.      The Verdict Is Consistent With And Supported By The Clear Weight Of The Evidence**

The State argues that the verdict is inconsistent and not supported by the evidence insofar as the jury found that the State did not have actual knowledge of the alleged sexual harassment under Title IX, but also found that the State and Lindquist breached their duty to protect Mariana from reasonably foreseeable harm.   The Court is unpersuaded.

The State bears a high burden to establish an irreconcilable inconsistency. The Seventh Amendment to the Constitution guarantees that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States" except "according to the rules of the common law."   The Court must accept any reasonable interpretation of the jury's actions, reconciling the jury's findings "by exegesis if necessary," *Gallick v. Baltimore & O. R.R. Co*., 372 U.S. 108, 119 (1963); "a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment."   *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd*., 369 U.S. 355, 364 (1962).   Further, the Court reviews the consistency of the jury's verdict "in light of the instructions given."   *Grosvenor Properties, Ltd. v. Southmark Corp*., 896 F.2d 1149, 1151 (9th Cir. 1990).

15

The jury did not render a verdict with irreconcilable inconsistencies.   The factual findings identified by the State – relating to the statutory Title IX claim on the one hand, and the state-law torts of negligence and negligent supervision on the other – are not incompatible.   The jury answered Question Number 2 relating to Title IX in the negative: "Have Plaintiffs proved that Defendant State of Hawaii [] had actual knowledge of the sexual harassment?"   The jury then answered "Yes" to Question Number 4 regarding negligence: "Have Plaintiffs proved that Defendants State of Hawaii [] and Kristin Lindquist breached their duty to protect Mariana from reasonably foreseeable harm?"   They also answered "Yes" to Question Number 6 regarding negligent supervision: "Have Plaintiffs proved that Defendants State of Hawaii [] and Kristin Lindquist breached their duty of supervision?"   The negative answer to Question Number 2 and the affirmative responses to Question Numbers 4 and 6 are not legally inconsistent and do not require a new trial.[3]   The State, essentially, is comparing incomparable questions.

---

[3]Although it asserts that the "jury's finding on question number 1 of the verdict form . . . is also inconsistent and not supported by the evidence," the State itself acknowledges that "it is not necessary to reach this issue."   The Court agrees and accordingly does not reach the issue.   The jury did not find the State liable under Title IX (Count I).   The verdict form's Question Number 1, asking whether the sexual harassment at issue was so severe, pervasive, and objectively offensive that it deprived Mariana of access to educational opportunities or benefits, as those terms are defined under the federal statute, is not dispositive of whether the State breached its common law duties to Plaintiffs.

16

There is no problem of legal irreconcilability because the jury did not return

answers that plainly violated the Court's instructions,[4] and the findings of fact are

_____

[4]With respect to Title IX's "actual knowledge" requirement, corresponding to the verdict form's Question Number 2, the jury was instructed as follows:

> The actual knowledge requirement is satisfied where an appropriate official possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which Plaintiffs' legal claim is based.

Dkt. No. 189 (Jury Instruction No. 17).   The jury was instructed as follows with respect to duty, negligence and foreseeability, which correspond to Questions Number 2 and Number 6:

> DUTY
> Defendants State of Hawaii Board of Education Department of Education and Kristin Lindquist have a duty to take reasonable steps to prevent reasonably foreseeable harm to their students.
>
> NEGLIGENCE
> Plaintiffs have alleged that Defendants State of Hawaii Board of Education Department of Education and Kristin Lindquist were negligent.   To prevail on this claim, Plaintiffs must prove that Defendants, standing in loco parentis, failed to take reasonable steps to prevent reasonably foreseeable harms to Plaintiff Mariana.
>
> NEGLIGENCE -- FORESEEABILITY
> In determining whether a person was negligent, it may help to ask whether a reasonable person in the same situation would have foreseen or anticipated that injury or damage could result from that person's action or inaction.   If such a result would be foreseeable by a reasonable person and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

Dkt. No. 189 (Instruction Nos. 20, 21, and 23).   The negligent supervision jury instruction, corresponding to Question Number 6, provided as follows:

> Plaintiffs have alleged negligent supervision against Defendants State of Hawaii Board of Education Department of Education and Kristin Lindquist. To prevail on this claim, Plaintiffs must prove that Defendants State of

neither inconsistent with a determination of liability, nor legally irreconcilable with each other or with a subsidiary legal conclusion.   *Cf. Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1038 (9th Cir. 2003) ("The alleged inconsistency here, however, arises not between two factual findings, or between a factual finding and the ultimate determination of liability, but between a factual finding and subsidiary legal conclusion within a single claim.").   In this case, there is no legal reason that the verdicts on the statutory Title IX claim and the state common law tort claims should necessarily be identical.   Neither is predicated on the other.   Whether "an appropriate official possessed enough knowledge of the harassment" such that the State had "actual knowledge" under Title IX is not dispositive of whether the State should have reasonably foreseen harm to Mariana.   The State could have lacked the former, while possessing the latter.

The jury, indeed, so found, and that finding is supported by the clear weight of the evidence.   When considering a motion for new trial based on the alleged insufficiency of evidence, "[a] trial court may grant a new trial only if the jury's

---

Hawaii Board of Education Department of Education or Kristin Lindquist either knew or reasonably should have foreseen that Ruston Tom would harm Mariana, and they failed to supervise the alleged assailant, Ruston, or the student allegedly harmed by the assailant, Mariana.

Dkt. No. 189 (Instruction No. 24).

verdict was against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). "[T]he district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Determining whether a jury verdict is against "the clear weight of the evidence" is a case-specific endeavor for which there is no easily articulated formula. *Id.* "A trial court may grant a new trial only if the verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "While a district court may view the evidence differently than the jury, a district court may not substitute its 'evaluations for those of the jurors.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1213 (D. Or. 2015) (quoting *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003)).

Considering the totality of evidence, including the fact that the jury had the opportunity to view the panoply of witnesses on the stand and judge their credibility during direct testimony and cross-examination, the Court finds that the jury's verdict

that the State and Lindquist breached their state-law negligence duties to Kauhako and Mariana was not against the clear weight of the evidence.   As discussed above, the evidence showed that various State employees were aware of at least one previous encounter in late 2012 between Mariana and Tom and had counseled them regarding appropriate behavior; that other than minimal counseling, the State took no other specific measure protective of Mariana between late 2012 and April 18, 2013; that notwithstanding the late 2012 encounter, Mariana and Tom were permitted to use the restroom – unaccompanied – some distance from their special education classroom; and that when the two students returned to their classroom on April 18, 2013, both were obviously distressed, indicating even to their teachers that something traumatic had occurred while they were unsupervised away from class. Of particular note, the jury also heard evidence that Lindquist told the investigating police officers on April 18, 2013 of an incident in late 2012 involving "touching" between Tom and Mariana.   Weighing the evidence as the Court saw it, the Court cannot conclude that "the verdict is against the clear weight of the evidence," *Molski*, 481 F.3d at 729, nor is the Court left with a "definite and firm conviction that a mistake has been committed," *Landes Constr., Co., Inc*., 833 F.2d at 1371-72 (citation omitted).   Accordingly, the Court rejects the State's challenge to the sufficiency of the evidence.

**C.**     **The Court Did Not Err In Permitting The Testimony of Dr. Lynch**

The Court next considers the State's arguments that it was error to allow Dr.

Lynch to testify as an expert witness because (1) she was not disclosed as an expert

and (2) her testimony resulted in an improper award of $20,000 in future medical

expenses.

The Court rejects the State's first contention because Dr. Lynch testified as

Mariana's treating physician, not as an expert.   In fact, the Court denied the State's

motion *in limine* to preclude expert opinion testimony from Dr. Lynch (Dkt. No.

106) because no expert report was required in order for Dr. Lynch to render opinions

formulated as Mariana's treating psychologist and her proffered testimony was

within the scope of that role.   *See* Dkt. No. 156 (4/12/16 Minutes).[5]   The State

acknowledges in its motion that "a written report was not required from Dr. Lynch,"

but argues that "disclosure that Plaintiffs intended to call her as an expert witness

---

[5]Generally, a treating physician is not "retained or specially employed to provide expert testimony"—a treating physician is a percipient witness of the treatment he or she rendered—and therefore is not subject to the written report requirement.   Fed.R.Civ.P. 26(a)(2) advisory committee's note (1993).   A treating physician is exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his or her opinions were formed during the course of treatment. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).   The *Goodman* decision confirms that a Rule 26(a)(2)(B) report is only required "when a treating physician morphs into a witness hired to render opinions that go beyond the usual scope of a treating physician's testimony."   *Goodman,* 644 F.3d at 819-20.   The *Goodman* exception is not applicable here, where the State offers no argument or evidence that Dr. Lynch's testimony or opinion was beyond the scope of the treatment she rendered to Mariana.

and the substance of her testimony was required to be disclosed to Plaintiffs on the date set by the court's Scheduling Orders."   Mem. In Supp. at 17-18.   The State argues that it was prejudiced because it took her deposition on May 29, 2015 – a year prior to trial – "believing that she was a treating provider as opposed to an expert witness."   *Id.* at 18.

The State could not have been unaware of the content of Dr. Lynch's testimony, and it points to no specific trial testimony that went beyond the usual scope of a treating physician.   Plaintiffs' witness list statement for Dr. Lynch, submitted several weeks before trial began, disclosed that that she would testify regarding her medical counseling of Mariana, and matters regarding liability and damages.   Dkt. No. 111 (Plaintiffs' Final Comprehensive Witness List).   Specifically, the witness statement provided:

> Dr. Lynch was Mariana's counselor.   She is expected to testify as to her communications with Mrs. Kauhako, her communications with Mariana, her examinations, findings, diagnoses, impressions, conclusions, and/or opinions as to Mariana's Autism, PTSD, psychological, emotional, and mental condition subsequent to the sexual assault, Mariana's appearance, demeanor and state of mind during the course of counseling, Mariana's progress and set-backs during the course of counseling, her knowledge of Mariana's disabilities and Autism, her knowledge of Mariana's PTSD and Autism, her knowledge of Mariana's character for honesty and truthfulness, her knowledge of the impact that the sexual assault had on Mariana, authentication of her medical and counseling records

regarding Mariana, and all other matters regarding liability and damages.

Dkt. No. 111.   The State repeatedly argues that Plaintiffs did not disclose that they "intended to call Dr. Lynch as an expert witness," (*see, e.g*., Reply at 9), but fails to identify any precise trial testimony that is the particular province of an expert or how such testimony caused it to be prejudiced.   Accordingly, the State's protestations of surprise lack merit, and it is not entitled to a new trial on this basis.

The State's arguments regarding the jury's award of future medical expenses are likewise without merit.   The Court defers to a jury's finding of the appropriate amount of damages unless the award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011) (quoting *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996)).   Such is not the case here.   The State maintains that the jury's award of $20,000 for Mariana's future medical expenses is unsupported because Dr. Lynch testified only that she would "expect future setbacks," but offered no evidence of what treatment was needed, or the cost of such treatment, in order to enable the jury to calculate damages with precision.   Plaintiffs point to the amount of past medical expenses paid to Dr. Lynch as a guidepost (Plaintiffs'

Exhibit 49), which provided the jury with some basis beyond speculation and conjecture.

Here, sufficient evidence exists in the record to support the jury's damages verdict and the Court properly defers to the jury's calculation of Mariana's future medical expenses. *See Georges v. Novartis Pharm. Corp.*, 988 F. Supp. 2d 1152, 1161-62 (C.D. Cal. 2013) ("Plaintiff has presented evidence of her past medical expenses, setting a baseline for reasonable medical expenses necessary to treat this condition. . . . Thus, the jury's award for future economic damages is not speculative but based on evidence presented at trial.  The Court defers to the jury's exact calculation of Plaintiff's past and future economic damages[.]"); *see also Zhang*, 339 F.3d at 1039-41 (upholding emotional damages based solely on the plaintiff's testimony).   Because the jury's $20,000 future damages award is neither monstrous, grossly excessive, nor purely speculative, the motion is denied.

//

//

//

## <u>CONCLUSION</u>

Based on the foregoing, the State's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial is DENIED.

IT IS SO ORDERED.

DATED: August 24, 2016 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

Kauhako v. State of Haw., et al., CV 13-00567 DKW-KJM; ORDER DENYING DEFENDANT STATE OF HAWAII BOARD OF EDUCATION DEPARTMENT OF EDUCATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL